# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

DALE SCOTT DAVIES,

    Plaintiff,

v.

ROBERT TOOLE, individually and in his official capacity,

    Defendant.

CIVIL ACTION NO.: 5:16-cv-65

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Waycross, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) For the reasons set forth below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary relief against Defendant in his official capacity and his claims for compensatory and punitive damages. Additionally, I **RECOMMEND** that the Court **DENY** Plaintiff's request for a preliminary injunction. However, Plaintiff's allegations arguably state colorable claims for injunctive relief and nominal damages against Defendant.

## BACKGROUND

In this action, Plaintiff complains about conditions of his confinement that began when he was housed at Georgia State Prison ("GSP") in Reidsville, Georgia. (Doc. 1.) Plaintiff asserts that he cannot eat meat due to his "beliefs of Al-Islam." (Id. at p. 2.) Thus, on May 21, 2016, he put in a request to receive vegan meals, and never received a response. Id. He goes on to state that "central office" denied his request on June 12, 2015. Id. Consequently, Plaintiff states that he is "having to sustain [himself] off of bread, water and other non-nutritional items." (Id. at

p. 3.) He blames Defendant Robert Toole, the Field Operation Manger, of the Georgia Department of Corrections ("DOC"), for this condition. (Id at p. 2.)

Plaintiff further alleges that he unsuccessfully attempted to resolve this issue through GSP's grievance process. He attaches some of his grievance forms to his Complaint. Pertinently, the DOC's Central Office responded with the following on November 9, 2015, "You allege that on 5/21/15 you put in a request for an alternative entrée program (Vegan Meal) and have not received a response. This review revealed that on 8/6/15 you were notified via memorandum by Chaplain Lyte that your request was denied per FOM Toole due to you not meeting requirements." (Id. at p. 9.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See

Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse

3

mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Section 1983 Claims for Monetary Damages Against Defendant in his Official Capacity

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendant in his official capacity. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendant in his official capacity as an employee of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Thus, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief, and therefore the Court should **DISMISS** these claims.

### II. Claims for Compensatory and Punitive Damages

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive

4

amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a de minim[i]s physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA.") *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). However, the Eleventh Circuit has held that Courts should dismiss an inmate's punitive and compensatory damages claims under Section 1997e(e) without prejudice to allow an inmate to refile his claims when and if he is released. Harris v. Garner, 216 F. 3d 970, 980 (11th Cir. 2004).

Additionally, the Eleventh Circuit has also stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams v. Brown, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271; see also, Smith v. Barrow, No. CV 311-044, 2012 WL 6519541, at *5 (S.D. Ga. Nov. 9, 2012) *report and recommendation adopted*, No. CV 311-044, 2012 WL 6522020 (S.D. Ga. Dec. 13, 2012) ("Nominal damages are available for violations of the First Amendment.")).

In this case, Plaintiff has not alleged that he has suffered any physical injury due to Defendant's alleged constitutional violations. Indeed, Plaintiff does not request compensatory or punitive damages in his prayer for relief. However, he does request "any additional relief this Court deems just, proper and equitable." (Doc. 1, p. 4.) Accordingly, to be clear, the Court should **DISMISS** any and all claims for compensatory and punitive damages **without prejudice** pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages and declaratory relief.[1]

---

[1] Plaintiff claims $1,000 in nominal damages. (Doc. 1, p. 4.) This amount far exceeds the amount available for nominal damages. See Cardin v. Via Tropical Fruites, Inc., No. 88-14201-CIV-MARCUS, 1993 WL 945324, at *21 (S.D. Fla. July 9, 1993) (explaining that nominal damages are limited to a trivial sum, typically one dollar, and summarizing cases holding the same). Because Plaintiff will only be able to recover nominal, and not compensatory, damages, he cannot obtain $1,000 in damages in this case.

## III. Supervisory Liability Claims against Defendant Toole

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*.[2] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Braddy, 133 F.3d at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff has named Defendant Toole liable based on more than his mere position as DOC's Field Operations Manager. Plaintiff attaches grievance paperwork that indicates that Defendant Toole directly denied Plaintiff's request for vegan meals. Thus, Plaintiff alleges that Defendant personally participated in the alleged constitutional and statutory violations. Moreover, Defendant Toole is a viable defendant pursuant to Luckey v. Harris, 860 F.2d 1012, 1015–16 (11th Cir. 1988). In Luckey, the Eleventh Circuit articulated the scope of the Ex Parte Young exception to the Eleventh Amendment. 860 F.2d at 1015–16 (citing Ex Parte Young, 209 U.S. 123, 157 (1908)). Specifically, the Court provided:

---

[2] The principle that *respondeat superior* is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

7

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the Young court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of. [W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists.

Id.

Thus, at this early stage, the Court finds that Plaintiff has stated a plausible claim for injunctive relief and nominal damages against Defendant Toole.[3]

## IV. RLUIPA Claims

Though Plaintiff does not cite the RLUIPA directly, construing his factual allegations liberally, he invokes that statute. See Jones v. St. Lawrence, No. CV410-066, 2010 WL 2772440, at *2 (S.D. Ga. July 13, 2010) ("While [the plaintiff] has styled this as a 42 U.S.C. § 1983 claim, this case actually arises under both § 1983 and the Religious Land Use and Institutionalized Persons Act[.]"). The RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of [Title 42], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). A plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise." Holt v. Hobbs, ___ U.S. ___, 135 S. Ct. 853, 862 (Jan. 20,

---

[3] Ordinarily, a plaintiff's transfer from one prison to another moots the plaintiff's claims for injunctive relief from unlawful prison conditions at the first prison. However, Plaintiff plausibly alleges that he continues to suffer from unlawful conditions which began at GSP (refusal to provide vegan meals) despite his transfer to Ware State Prison. He alleges that the refusal came from DOC's Central Office and, therefore, that the decision still applies to him at Ware State Prison. Therefore, Plaintiff's transfer does not moot his claims for injunctive relief.

8

2015). The RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]" 42 U.S.C. § 2000cc–5(7)(A). A plaintiff also has the burden of establishing the policy or action "substantially burden[s an] exercise of religion." Holt, ___ U.S. at ___, 135 S. Ct. at 862.

Plaintiff has plausibly alleged that Defendant has implemented a policy that implicates and substantially burdens his exercise of religion. According to Plaintiff, he has been denied the ability to eat meals consistent with his religious beliefs. He states that he has not been provided any alternative meals but instead has had to sustain himself on bread, water, and "non-nutritional items." The Court must accept such assertions as true in conducting a frivolity review. Additionally, at this stage, the Court is not able to weigh whether the decision regarding Plaintiff's meals is the least restrictive means to further a compelling government interest. Further, as discussed above, Plaintiff does not merely name Defendant in this action due to his supervisory status. Rather, he alleges that Defendant directly made the decision regarding his meals. Thus, Plaintiff arguably sets forth a plausible cause of action pursuant to the RLUIPA against Defendant.

However, Plaintiff is limited to seeking injunctive relief and nominal damages under the RLUIPA. While the RLUIPA creates "a private cause of action for a prison inmate if section 3 is violated, and further provides that the complaining party, if successful, may 'obtain appropriate relief against a government,'" including monetary relief, a prisoner is still subject to the terms of the PLRA, as explained above. Smith, 502 F.3d at 1269 (quoting 42 U.S.C. § 2000cc–2(a)), and *abrogated on other grounds by* Sossamon, 563 U.S. 277 (2011). Moreover, the Eleventh Circuit has held that Section 3 of the RLUIPA (42 U.S.C. § 2000cc-1) "cannot be

construed as creating a private action against individual defendants for monetary damages." Smith, 502 F.3d at 1275.

For these reasons, the Court should also **DISMISS** Plaintiff's compensatory and punitive damages claims under the RLUIPA. However, Plaintiff's request for nominal damages and injunctive relief under the RLUIPA survives frivolity review.

**V.     Free Exercise Claims**

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion." Wilkinson v. GEO Grp., Inc., No. 14-10215, 2015 WL 1526642, at *2 (11th Cir. Apr. 7, 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)). To prove that his religious exercise was substantially burdened, a plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires." Id. The defendants can then support their conduct on the ground that they applied a "neutral law of general applicability[.]" Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).

Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause. However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). "In the prison context, the state actor can defend the action if it is 'reasonably related to legitimate penological interests.'" Wilkinson,

2015 WL 1526642, at *2 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Put succinctly, "[i]n a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief."  Hosey-Bey v. Williams, No. 2:12-CV-959-WHA, 2015 WL 4988388, at *6 (M.D. Ala. Aug. 19, 2015).

Plaintiff's allegation that Defendant refused to provide food to Plaintiff consistent with his religion sets forth a plausible free exercise claim against Defendant.  Again, at this stage, the Court must accept this claim as true.  Additionally, the Court does not have the benefit of any legitimate penological interests that Defendant may offer to support his decision.  Therefore, Plaintiff's free exercise claim will survive frivolity review.

## VI. Request for Preliminary Injunction

Plaintiff has sought preliminary injunctive relief from the Court.  (Doc. 1, p. 5.)  To receive a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites."  Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).[4]

---

[4] Additionally, in reviewing Plaintiff's Motion, the Court is cognizant that courts are properly reluctant to interfere with prison administration and discipline, absent a clear abuse of discretion.  See Procunier v.

Plaintiff fails to establish that he is entitled to a preliminary injunction at this stage. Specifically, Plaintiff has not demonstrated a substantial likelihood of success on the merits of his claims. See Muhammad v. Crosby, No. 405CV193-WS, 2007 WL 2376050, at *4 (N.D. Fla. Aug. 16, 2007) (concluding that plaintiff was not able to satisfy substantial likelihood of success factor, because proving prison diet claims is a "difficult undertaking"). Accordingly, the Court should **DENY** Plaintiff's request for a preliminary injunction. This is not to say that Plaintiff may not obtain injunctive relief at some other stage of this proceeding. However, at this time, the Court should not provide such an extraordinary remedy.

## CONCLUSION

For all of the above reasons, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary relief against Defendant in his official capacity and his claims for compensatory and punitive damages. Additionally, I **RECOMMEND** that the Court **DENY** Plaintiff's request for a preliminary injunction.

---

Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Alabama, 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. N. Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS

Plaintiff's allegations in his Complaint arguably state colorable claims for injunctive relief and nominal damages under the RLUIPA and 42 U.S.C. § 1983. Consequently, the United States Marshal shall serve a copy of Plaintiff's Complaint and a copy of this Order upon Defendant without prepayment of cost. The Court also provides the following instructions to the

parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANT

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendant is hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendant is further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendant shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendant takes the deposition of any other person, Defendant is ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendant shall notify Plaintiff of the deposition and advise him that he may serve on Defendant, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the

witness, if any. Defendant shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant or, if appearance has been entered by counsel, upon his attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendant or his counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendant, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a Defendant. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendant. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending

action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by

17

reliance on the conclusory allegations contained within the complaint.  Should the Defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendant's affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 14th day of December, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA